**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JOSEPH and THERESA PICARD** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.:** 1:14-cv-882 |
| | ) | |
| **v.** | ) | |
| | ) | **Judge:** |
| **EXPERIAN INFORMATION SOLUTIONS, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT
**(JURY DEMAND ENDORSED HEREIN)**

---

Plaintiffs Joseph and Theresa Picard, by and through the undersigned counsel, for their *Complaint* against Defendant, Experian Information Solutions, Inc., state and aver as follows:

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2. Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both

emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.[1]

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell to readily paying subscribers (*i.e.*, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6. Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, *to wit*:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid

[1] Experian acknowledges this potential harm to consumers every time it advertises for "freecreditreport.com," seen all over television and the internet, or every time it sells its credit monitoring service to a consumer.

> and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8. To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9. This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiffs, Joseph and Theresa Picard ("Plaintiffs" or "the Picards"), against Experian Information Solutions, Inc., for its willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

**<u>JURISDICTION AND VENUE</u>**

10. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1681*p* and 28 U.S.C. § 1337. Venue in this judicial district is proper as Plaintiffs reside in this district, Defendant conducts business in this district, and many of the facts relevant to this *Complaint* occurred in this district.

**<u>PARTIES</u>**

11. The Picards are adult individuals who are and were, at all times relevant hereto, married residents of Silver Spring, Maryland. Plaintiffs are "consumers" as defined by Section 1681*a*(c) of the FCRA.

12. Defendant, Experian Information Solutions, Inc. ("Experian"), is an Ohio corporation doing business throughout the United States and in the State of Maryland. Experian is a "consumer reporting agency" as defined by Section 1681*a*(f) of the FCRA, and is one of the largest CRAs in the world.

**FACTUAL ALLEGATIONS**

13. In 2006, the Picards, who were joint-owners of a rental property in Neptune City, New Jersey, leased the house to a tenant who defaulted on his rent payments to the Picards.

14. In late 2007, the Picards initiated a lawsuit against the defaulting tenant in a New Jersey Superior Court for eviction, unpaid rent and damage to the premises, ultimately obtaining a default judgment against the tenant for over $15,000.00. *See Certifications of Judgment*, dated January 10, 2008 and December 17, 2012, respectively (copies of which are attached collectively hereto as Exhibit 1).

15. Ultimately, the Picards were unable to collect the judgment against the tenant.

16. In 2011, Mr. Picard accepted a job offer in Washington, D.C. and the Picards subsequently moved to Silver Spring, Maryland.

17. In attempting to secure financing for a new condominium, the Picards discovered that Experian was inaccurately reporting that the aforementioned court judgment in the Picards' favor was rendered ***against*** them. In other words, according to Mr. Picard's Experian credit report, they ***owed*** a $15,000.00 judgment.

18. Plaintiffs were shocked, embarrassed and angry at what was being reported about them. The Picards take great pride and put considerable value in maintaining exceptional credit ratings. To their belief and understanding, they have never been in default with any of their

credit obligations and certainly have never been sued for same. In fact, they have never been involved as a party to any other lawsuit.

19. With Mr. Picard's new job beginning, and the Picards' needing to find a place to live upon their move from New Jersey, Plaintiffs endured significant stress and anxiety when they were not initially able to secure the requested financing in a timely fashion.

20. Without preliminary approval for the financing, the Picards were forced to hire an attorney to write a letter to the mortgage company explaining the misreporting by Experian. In support of his letter, the attorney enclosed copies of the *Certificate of Judgment* dated January 10, 2008 (*see* Exhibit 1) and other court documentation proving that the judgment at issue was rendered ***in favor*** of Mr. Picard.

21. While the mortgage company eventually approved the Picards' requested financing in light of the letter of explanation and court documentation from the Picards' attorney, Plaintiffs are unaware as to whether or not they were approved at a higher interest rate (or at any other unfavorable terms) than they may have been able to secure without the erroneous judgment appearing on Mr. Picard's Experian credit report.

22. Nevertheless, the erroneous judgment entry on Mr. Picard's Experian credit report imposed upon Plaintiffs additional out-of-pocket costs, embarrassment and considerable stress in the process of securing the mortgage.

23. As the Picards take great pride in maintaining their excellent credit record, Mr. Picard diligently sought to have his credit report corrected by Experian.

24. Throughout early 2012, Mr. Picard placed numerous calls to Experian to dispute the erroneous judgment entry. He had no luck getting any satisfactory assistance via telephone.

25. In May 2012, Mr. Picard wrote to Experian, enclosing with his letter copies of documents he and his attorney had obtained from the New Jersey court proving that the judgment being reported by Experian against him, had in fact been rendered in his favor.

26. Plaintiffs trusted and believed that Experian would properly handle and quickly fix what seemed to be an easy matter to correct, and that Mr. Picard's credit report would be updated accordingly by simply deleting the inaccurate public record.

27. However, by letter dated June 4, 2012, Experian represented to Plaintiffs that it had completed its "investigation" of Mr. Picard's dispute, and that the erroneous public record information would remain unchanged on Mr. Picard's credit report. *See Dispute Results*, dated June 4, 2012 from Experian to Joseph Picard (a redacted copy of which is attached hereto as Exhibit 2).

28. Plaintiffs were shocked, angered and dismayed at how this could possibly be Experian's response given that Mr. Picard had provided all necessary information to Experian for it to easily identify and correct such a blatant error.

29. Plaintiffs began to think that Experian did not conduct any investigation into Mr. Picard's disputes at all, nor cared whether or not it was reporting and disseminating false and highly damaging information about him.

30. Experian clearly understands how harmful an outstanding judgment entry would be to the Picards' otherwise exceptional credit rating.

31. Determined to clear his good name, Mr. Picard initiated additional disputes with Experian in June 2012, September 2012 and January 2013, again providing Experian the underlying court documentation proving that the judgment was being reported incorrectly.

32. Each of Mr. Picard's disputes was met with the same rote response from Experian. *See Dispute Results*, dated June 7, 2012, October 2, 2012 and January 24, 2013, respectively (redacted copies of which are attached collectively hereto as Exhibit 3).

33. Mr. Picard followed up on these various *Dispute Results* by calling Experian on numerous occasions in an attempt to obtain some sort of explanation as to why such a clearly inaccurate judgment entry was not being deleted.

34. Mr. Picard's calls fell on deaf ears. Experian continued to refuse to delete the false information, further infuriating Plaintiffs.

35. At this point, Plaintiffs are at a complete loss as to what else they can do when Experian obviously does not care that its records are false.

36. As of today, Mr. Picard's Experian credit report continues to paint a false and damaging picture of Plaintiffs. *See Experian Credit Report* of Joseph M. Picard, dated October 21, 2013 (a redacted copy of which is attached hereto as Exhibit 4).

37. As a direct result of Experian's refusal to remove objectively inaccurate and highly damaging information from Mr. Picard's credit report, Plaintiffs have endured unwarranted credit denials, credit limit decreases on existing credit accounts, and have been forced to pay higher interest rates (and/or have been subjected to other unfavorable terms) on approved credit and insurance.

38. Plaintiffs are left to question how and why ***they*** are supposed to prove that the judgment entry is incorrect as reported, and why Experian is allowed to get away with skirting its obligations under federal law to report only accurate information about them.

39. The entire experience has imposed upon Plaintiffs significant frustration, distress and distrust, and has rendered Plaintiffs hopeless as to their ability to regain the good name and credit rating that they deserve and have worked hard to earn.

40. Mr. Picard has justifiably avoided applying for additional credit for himself and his wife until the inaccurate information is ultimately corrected on his credit report.

41. Absent litigation, Plaintiffs do not believe that Mr. Picard's credit record will ever be accurate. Thus, the instant lawsuit is being commenced.

**COUNT ONE**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

42. Plaintiffs hereby incorporate by reference all well-pleaded allegations contained in the preceding paragraphs as if fully rewritten herein.

43. A "consumer reporting agency" is defined by the FCRA as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681*a*(f).

44. Experian is a "consumer reporting agency" as defined above.

45. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a).

46. Section 1681*o* of the FCRA provides for civil liability against any CRA that is negligent in failing to comply with any requirement imposed under the Act.

**Experian's Failure To Adopt and/or Follow Reasonable Procedures**

47. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of

the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

48. On numerous occasions over the past two-plus (2+) years, Experian has prepared a consumer report pertaining to Mr. Picard, and disseminated such report to one or more third party(s) that failed to assure "maximum possible accuracy" of information pertaining to Plaintiff.

49. The consumer reports prepared by Experian concerning Mr. Picard contained objectively inaccurate information.

50. Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published concerning Mr. Picard, in violation of 15 U.S.C. § 1681*e*(b).

51. As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures as mandated by the FCRA, Plaintiffs have suffered loss and damage including, but not limited to: financial loss, loss of opportunity to obtain credit, loss of creditworthiness, damage to reputation, expenditure of considerable time and out-of-pocket expense, worry, fear, distress, frustration and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

52. Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom-line above its "grave responsibilities" to report accurate data.

53. Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiffs. The injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for

statutory damages and an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*.

**<u>Experian's Failure to Conduct Reasonable Reinvestigations</u>**

54. The FCRA mandates that a CRA conduct an investigation "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

55. The FCRA further provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

56. On numerous occasions throughout 2012 and 2013, Mr. Picard initiated disputes with Experian requesting that they delete a specific item in his credit file that is patently inaccurate and highly damaging to him and his wife, namely, a public record entry reflecting that a court judgment had been rendered against him for over $15,000.00 and remained unsatisfied.

57. Plaintiffs specifically advised Experian on numerous occasions that a mistake had been made, provided all necessary documentation to Experian to support same, and requested the public record entry be corrected accordingly, *i.e.*, deleted from Mr. Picard's credit report.

58. Either Experian conducted ***no*** investigations into Mr. Picard's disputes, or such investigations were so shoddy as to allow objectively false and highly damaging information to remain in Mr. Picard's credit file.

59. By failing to conduct a reasonable investigation into Plaintiffs' disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1) with respect to each and every failed dispute lodged by Plaintiffs.

60. As a direct and proximate result of Experian's repeated disregard for each and every one of Plaintiffs' disputes as outlined above, Plaintiffs have suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

61. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiffs have suffered loss and damage including, but not limited to: financial loss, loss of opportunity to obtain credit, loss of creditworthiness, damage to reputation, expenditure of considerable time and out-of-pocket expense, worry, fear, distress, frustration and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

62. Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom-line above its "grave responsibilities" to report accurate data.

63. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiffs. The injuries suffered by Plaintiffs are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages and an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*.

**WHEREFORE**, Plaintiffs, Joseph and Theresa Picard, pray for judgment in their favor and against Defendant, Experian Information Solutions, Inc., and for the following relief:

A. Actual damages in such amounts as determined by the jury;

B. Statutory damages, pursuant to 15 U.S.C. § 1681*n*;

C. Punitive damages, pursuant to 15 U.S.C. § 1681*n*;

D. Costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681*n* and 15 U.S.C. § 1681*o*; and

E. Such other and further relief as may be just and proper.

Dated this 20th day of March, 2014.

Respectfully Submitted,

*/s/ Reid D. Henderson*

Reid D. Henderson
**RDH LAW, PC**
1425 K Street, NW, Suite 350
Washington, DC 20005
Telephone: (202) 670-9129
Facsimile: (202) 280-1417
E-mail: Reid@RDHLawPC.com

Sylvia A. Goldsmith (Ohio # 0064871)
Geoff B. McCarrell (Ohio # 0086427)
Nick L. Walton (Ohio # 0091281)
**GOLDSMITH & ASSOCIATES, LLC**
Park West Building
20545 Center Ridge Road, Suite 120
Rocky River, OH 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
E-mail: sgoldsmith@sgoldsmithlawoffice.com

*Attorneys for Plaintiffs*

**JURY DEMAND**

Plaintiffs respectfully demand a trial by jury on all issues so triable in this lawsuit.

*/s/ Reid D. Henderson*

*Attorney for Plaintiffs*